# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

                                                                                              Criminal Case No. 16-CR-30033-TSH

vs.

RALPH SANTANIELLO, et al.,
Defendants

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

      NOW COMES the Defendant, Ralph Santaniello, through counsel, and hereby moves this Honorable Court for a compassionate release sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) as there exists extraordinary and compelling circumstances that warrant his release from custody. Mr. Santaniello asks that the court place him on home confinement for the few months remaining of his sentence. The circumstances facing Mr. Santaniello and his family have become exponentially more dire given the COVID-19 global pandemic and the widespread tragic impact it is having on the United States of America. Mr. Santaniello's only child, Tiana, is stricken with microcephaly, and it has rendered her bedridden, on a feeding tube, and totally reliant on other people to care for her. Given the COVID-19 epidemic, Tiana, is specifically vulnerable to the disease due to her compromised health condition. Tiana was not expected to have a long-life expectancy given her diagnosis, and the very real prospect of Tiana not being able to survive a COVID-19 infection, especially when the defendant is so close to wrapping up his sentence,

compels the conclusion that this motion should be allowed, so Mr. Santaniello may return home to care for his only child at this most critical time.

## I. FACTUAL BACKGROUND

Mr. Santaniello is currently serving a 60 month sentence at Loretto FCI located in Pennsylvania. He is scheduled to be released to a halfway house on 6/10/2020 and ultimately be released from custody all together on 11/6/2020. Mr. Santaniello filed a request for compassionate release to the Warden at Loretto FCI based on his daughter's health circumstances. The warden failed to respond to Mr. Santaniello's request within 30 days.

The Defendant has a daughter, Tiana, in her mid-twenties who is severely disabled. Tiana is Mr. Santaniello's only child. Tiana suffers from Microcephaly, which is a condition in which the circumference of the head is smaller than normal due to the under-development of the brain. This disease has rendered her bedridden, on a feeding tube and totally reliant on others to care for her. Tiana has been in need of 24 hour around the clock care since birth and has a nurse who visits the home to help care for her. She was not expected to have a long-life expectancy given her severe health condition. However, the recent, rapid, and very lethal spread of the COVID-19 virus has placed Tiana in grave danger. If Tiana contracts the virus, it could very possibly prove to be deadly. To complicate the problem, since the nation is going through this pandemic, it is having an impact on healthcare workers. If this continues, the family faces the concern that a nurse may not be able to assist with the care of Tiana or that the nurse's presence could expose Tiana to the virus. Should Mr. Santaniello be released from custody, he will be home with Tiana in order to care for her and minimize the need for outside individuals, including health care workers, to enter the home and potentially expose Tiana to the virus. If released, Mr. Santaniello would self-quarantine for 14 days away from his daughter's residence so as not to expose her to any risk of contracting the virus. At

the conclusion of the 14-day period, Mr. Santaniello would move into the residence with his daughter to care for her.

## II. ANALYSIS

Before enactment of the First Step Act in December 2018, compassionate release was available only if the Bureau of Prisons filed a motion requesting it. "The court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment ..." 18 U.S.C. § 3582 (as effective Nov. 2, 2002 to Dec. 20, 2018). See also U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce the term of imprisonment ..."). After passage of the First Step Act, however, individuals such as Mr. Santaniello may make a motion directly to the court under certain circumstances, including, if after making application to the warden, 30 days goes by without a response. "The court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days* from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ..." 18 U.S.C. § 3582(c)(1)(A)(emphasis added). This lapse of 30 days is what transpired in Mr. Santaniello's case, as he submitted his request based on the health circumstances of his daughter in May of 2019 and to date has received no response back from the Bureau of Prisons.

Even if the lapse of 30 days did not occur in Mr. Santaniello's case, he would still have standing to bring this motion, as the need to exhaust all administrative remedies is subject to exception, and courts have already found exceptions where COVID-19 has been implicated. The requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." United States v. Perez, No. 17-CR-513-3, 2020 WL 1546422, at 2

(S.D.N.Y. Apr. 1, 2020); see also United States v. Colvin, No. 19-CR-179, 2020 WL 1613943, at 2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); United States v. Zukerman, No. 16-CR-194, 2020 WL 1659880, at 2 (S.D.N.Y. Apr. 3, 2020). "Even where exhaustion is seemingly mandated by statute ..., the requirement is not absolute." Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019). There are generally three bases for waiver of an exhaustion requirement. See Perez, 2020 WL 1546422, at 2 (discussing exceptions to statutory exhaustion in context of motion for compassionate release during COVID-19 pandemic). "First, exhaustion may be unnecessary where it would be futile, either because agency decision makers are biased or because the agency has already determined the issue." Washington, 925 F.3d at 118. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." Id. at 120. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." Id. at 119-20. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id. at 119.

Pursuant to 18 U.S.C. § 3582, "the court may reduce a term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in Section 3553(a) to the extent that they are applicable..." 18 U.S.C. § 3582(a). Congress determined that certain instances should be considered by the court as to whether a sentence reduction is warranted, which are all described in 18 U.S.C. § 3582. The consideration applicable to Mr. Santaniello is whether extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §

3582(c)(1)(A)(i). Any reduction needs to also be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). However, the policy statements of the Sentencing Commission have not been updated to reflect the passage of the First Step Act. See United States v. Gross, No. 2:04-CR-32-RMP, 2019 WL 2437463, at 2 (E.D. Wash. June 11, 2019).[1] It still maintains pre-First Step Act language such as citing that *only* the Director of the Bureau of Prisons can bring a motion to the court for release of an inmate. U.S.S.G. § 1B1.13. Similarly, the policy statement contains defined categories as to when the Sentencing Commission believes extraordinary and compelling reasons exist to warrant a defendant's release but leaves it up to the discretion of the Director of the Bureau of Prisons to determine "other reasons" that would warrant release for extraordinary or compelling reasons, which are not listed or in combination with, those listed in the policy statement. U.S.S.G. § 1B1.13 n.1(D). As such, there has been some disagreement within the courts as to how to interpret this policy statement in light of its not having yet been updated after passage of the First Step Act. Compare United States v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923, at 4 (S.D. Tex. June 17, 2019) (holding that requiring the Bureau of Prisons to determine when additional extraordinary or compelling reasons exist after the passage of the First Step Act "would contravene the explicit purpose of the new amendments"), with United States v. Lynn, No. 89-0072-WS, 2019 WL 3805349, at 4 (S.D. Ala. Aug. 12, 2019) (holding that Sentencing Commission's pre-First Step Act guidance binds courts unless and until the Commission chooses to amend it to decide that the Bureau of Prisons should no longer "be the gatekeeper regarding the residual category of extraordinary and compelling reasons for compassionate release").

---

[1] As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to motions brought by defendants in the near future. The Commission consists of seven voting members and requires four for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). As of the second quarter of fiscal year 2019, the Commission had only two voting members. U.S. Sentencing Comm'n, Annual Report 2–3, 2018, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/2018-Annual-Report.pdf.

The majority of the districts, that have considered this issue regarding the effect of the Sentencing Commission's old policy statement,  have concluded that the old policy statement provides helpful guidance, but it does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).  United States v. Jeremy Rodriguez, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at 4 (E.D. Pa. Apr. 1, 2020). District Courts within the First Circuit have also agreed with this majority rule, that in light of the amendments made as part of the First Step Act, the courts can exercise discretion regarding what "other reasons" may qualify as extraordinary and compelling, and it is not left solely to the discretion of the Director of the Bureau of Prisons. In United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086 2019 (D. Me. July 11, 2019), Judge Hornby of the District of Maine opined that interpreting the Sentencing Commission's guidance on compassionate release today begins with the premise that "[t]he First Step Act did not change the statutory criteria for compassionate release, but it did change the procedures, so that the Bureau of Prisons is no longer an obstacle to a court's consideration of whether compassionate release is appropriate." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at 3 (D. Me. July 11, 2019). See also United States v. Bucci, 409 F. Supp. 3d 1 (D. Mass. 2019), ( Judge Young adopts the reasoning Judge Hornby in United States v. Fox). For some other courts that have similarly taken this view see:  United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at 6 (M.D.N.C. June 28, 2019); see also United States v. Hilton, No. 1:18CR324-1, 2020 WL 836729, at 2 (M.D.N.C. Feb. 20, 2020); United States Of America, v. John Mccarthy, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at 4 (D. Conn. Apr. 8, 2020).

Mr. Santaniello's situation is extraordinary and compelling as his only daughter, Tiana, suffers from microcephaly, is bedridden, is on a feeding tube, and requires others to care for her, and given her compromised health situation is at risk for lethal consequences if contracting COVID-19.

> COVID-19 has paralyzed the entire world. The disease has spread exponentially, shutting down schools, jobs, professional sports seasons, and life as we know it. It may kill 200,000 Americans and infect millions more. At this point, there is no approved cure, treatment, or vaccine to prevent it. People with pre-existing medical conditions…face a particularly high risk of dying or suffering severe health effects should they contract the disease.

United States v. Rodriguez, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at 1 (E.D. Pa. Apr. 1, 2020)

While Mr. Santaniello's situation does not fall neatly into the Sentencing Commission's outdated policy statement, there are general themes within the statement that are applicable to Mr. Santaniello. In the commentary to the policy statement, at U.S.S.G. § 1B1.13 n.1(C) Family Circumstances are a consideration that the policy contemplates. The policy lists just two examples of family circumstances involving the death or incapacity of a minor child's caregiver; however the "catch all" provision in U.S.S.G. § 1B1.13 n.1(D) contemplates that there are "other reasons" that should be considered that may be either wholly different from, or in combination with, the reasons specifically outlined in the policy. In Mr. Santaniello's case, this pandemic implicates the fact that caregivers of Tiana are at high risk of either themselves contracting the disease or, more tragically, bringing the disease into the home and giving it to Tiana. Tiana has a nurse who comes into the home to provide care. Obviously, with the impact the pandemic is having on health care professionals, it is possible that the disease could imminently impact the ability of the nurse to be available to care for Tiana or bring the disease into the home from other patients the nurse is caring for. Mr. Santaniello would be available to care for his daughter around the clock, if he were to be released, thereby minimizing, to the extent possible, the need for outside individuals to enter the home and care for his daughter and exposing her to the virus. "Family circumstances" and the need for caregiving of children is generally a consideration of the Sentencing Commission's policy statement, and Mr. Santaniello's circumstances in this regard would implicate the "catch all" or

"other reasons" provisions which allow for considerations outside of examples specifically cited in the policy. While Tiana's health was known at the time of sentencing, the global pandemic, that is occurring and its potentially lethal impact on Tiana, was not known or foreseeable. The Sentencing Commission opines in its policy statement that even if an extraordinary or compelling reason was foreseeable at the time of sentencing it is not a bar to a sentence reduction. "Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." U.S.S.G. § 1B1.13 n.2.

What truly makes these extraordinary and compelling circumstances for Mr. Santaniello in regards to his daughter, Tiana, is the devastating impact the virus could have if she contracts it. Tiana has already outlived her life expectancy, so her health is very fragile. Tiana is at a clear risk, given her compromised health situation, of this virus having fatal consequences to her should she contract it. This is not a matter of maintaining the status quo for Tiana's health. There are truly life and death consequences to Tiana in this pandemic. The luxury of time is not on our side, and there is no wait and see position that can be taken at this juncture. If action is not taken now to allow Mr. Santaniello to be with his daughter, and provide the needed care for her in order to limit the need for outside individuals to enter the home, it will be too late should Tiana contract the virus.  Mr. Santaniello faces the prospect of his only child dying from this virus while he is incarcerated, but would otherwise have the ability to provide needed care for her, should he be placed on home confinement. This situation would certainly seem to qualify as extraordinary and compelling by any measure.

The coronavirus relief bill, enacted on March 27, 2020, expands the BOP's ability to move prisoners to home confinement to whatever amount of time the Director of the Bureau of Prisons

deems appropriate, during this national emergency. see Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020). Mr. Santaniello was just weeks away from being eligible for home confinement prior to the passage of the CARES Act pursuant to 18 U.S.C. § 3624(c)(2) but is now eligible in the BOP's discretion after passage thereof. This means that allowing Mr. Santaniello to move to home confinement now would be a move by the court, which would not even be exceeding the BOP's own discretion at this point given Congresses recent actions. Mr. Santaniello is also concerned about the transition to a halfway house in June, as halfway houses serve a transient prison population in generally close quarters. The prospect of Mr. Santaniello contracting the virus, and then potentially exposing Tiana, becomes an even greater risk if he is placed in a halfway house. 18 U.S.C. § 3582 calls for consideration of any applicable factors of 18 USCA § 3553(a), since this court sentenced Mr. Santaniello, it is aware of these factors as applied to Mr. Santaniello. It is important to note, however, that incarceration has served its purpose under 18 USCA § 3553(a), and Mr. Santaniello has served his time without any incidents or infractions. He has also participated in numerous programs while incarcerated with successful completion. He is, by all accounts, a model prisoner, and a period of home confinement at what is now the near end of Mr. Santaniello's sentence will not detract from any of the listed factors nor create any sentencing disparities.

Should Mr. Santaniello be released to home confinement, his plan is to quarantine himself for 14 days to ensure he does not have the virus at a residence away from his daughter. At the conclusion of the 14 day period, he will move in with his daughter to care for her and thereby minimize the contact she will have with outside caretakers in an effort to prevent exposing his only child to the virus, which could otherwise prove lethal.

III. CONCLUSION

Based upon the foregoing arguments and authorities, this Honorable Court is respectfully urged to place Mr. Santaniello on home confinement for the remaining months of his sentence.

| | |
|---|---|
| Respectfully Submitted,<br>RALPH SANTANIELLO,<br>By His Attorney, | Respectfully Submitted,<br>RALPH SANTANIELLO,<br>By His Attorney, |
| /s/ Daniel D. Kelly | /s/ Daniel C. Hagan, Jr. |
| Daniel D. Kelly, Esq.<br>33 Mulberry Street<br>Springfield, MA 01105<br>413-733-0770 phone<br>413-733-1245 fax<br>BBO No.: 634648 | Daniel C. Hagan, Jr., Esq.<br>33 Mulberry Street<br>Springfield, MA 01105<br>413-733-0770 phone<br>413-733-1245 fax<br>BBO No.: 674936 |

## CERTIFICATE OF SERVICE

I, Daniel D. Kelly, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 15, 2020.

/s/ Daniel D. Kelly

Daniel D. Kelly, Esq.
33 Mulberry Street
Springfield, MA 01105
413-733-0770 phone
413-733-1245 fax
BBO#: 634648